UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL A. WALKER,**

       **Plaintiff,**

Case No. 03-72850

v.

HONORABLE DENISE PAGE HOOD

**EAGLE PRESS & EQUIPMENT COMPANY, LTD., a foreign corporation,**

       **Defendant.**

_____/

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiff Michael Walker brings this action against Defendant Eagle Press & Equipment Company alleging claims of general negligence as well as failure to warn. Plaintiff contends Defendant created an unreasonably dangerous hazard on a large hydraulic press manufactured and shipped by Defendant, when Defendant covered a large hole at the top of the press with a piece of cardboard.

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on February 14, 2005. Plaintiff filed his Response to this motion on March 21, 2005. Defendant timely replied on April 6, 2005. Plaintiff also filed a Motion for Leave to file a Supplemental Brief, to which Defendant filed a Response. Defendant moves for summary judgment on the following bases: (1) Plaintiff cannot recover on his failure to warn claim because he was allegedly warned about the

holes and their dangers; (2) recovery is barred by the sophisticated user doctrine; and (3) Plaintiff cannot allege traditional product liability theories because his fall occurred while working on top of the crown, and his fall implicates neither a design nor a manufacturing flaw. For the reasons set forth below, the Court denies Defendant's Motion.

## II.     STATEMENT OF FACTS

Plaintiff was employed by Phoenix Machinery Movers, Inc. ("Phoenix"). (Compl. at ¶ 5). On May 1, 2001, Plaintiff was in the process of installing a hydraulic power press sold by Defendant to Majestic Industries, when he fell and sustained permanent and severe injuries. (Id. at ¶ 6). Due to the large size of the press, upon receiving an order Defendant would disassemble the press into several pieces at its Canadian facility. Portions of the press were then shrink-wrapped and shipped to the purchaser. Once the press was received by the purchaser, it would be reassembled by riggers such as Phoenix. In its disassembled state, there are large holes located at the top of the press. Prior to shipping, Defendant covered these large holes with cardboard stapled to the edges. "Do Not Step" was written on the surface of the cardboard.

While Plaintiff was working on reassembling the press, he fell through the cardboard covered opening located at the top of the machine, sustaining serious debilitating injuries. (Id. at ¶ 8). Plaintiff alleges Defendant owed him a duty to adequately warn him of the dangers located at the top of the press. Plaintiff further alleges Defendant violated its duty by failing to: (1) supply the power press at issue so as to be reasonably safe for unloading at the place of destination and installation; (2) supply the power press at issue with reasonably adequate and necessary devices to cover openings on and within the power press; (3) adequately inspect and test the power press prior to its delivery; and (4) adequately warn and instruct regarding the dangerous and defective nature of the packaging when same were known or reasonably should have been known. (Id. at ¶ 9).

2

**III.    STANDARD OF REVIEW**

The procedure for considering whether summary judgment is appropriate is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also, *Matsushia Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id*. at 1479.

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id*. (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere

3

scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id*. The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the records upon which it seeks to rely to on to create a genuine issue of material fact.

IV.     **APPLICABLE LAW & ANALYSIS**

Defendant asserts it owed Plaintiff no duty to warn of specific dangers. On this basis, Defendant argues there is no genuine issue of material fact regarding whether Plaintiff received a warning sufficient to notify him of the danger. *See Aetna Casualty & Surety Co. v. Ralph Wilson Plastics Co.,* 202 Mich. App. 540, 545-546 (1993). Even if a duty to warn existed, Defendant argues Plaintiff's recovery is barred as a matter of law by the open and obvious doctrine or because Plaintiff is considered a sophisticated user. In the alternative, Defendant alleges Plaintiff did receive direct warnings communicated to him, and as such all the dangers were fully disclosed.

        A.     **Manufacturer's Duty to Warn**

Plaintiff asserts that it is well established under Michigan law that a manufacturer has a duty to warn of dangerous propensities that are known or should be known to the manufacturer. *Smith Jr., v. E.R. Squibb & Sons, Inc.*, 69 Mich. App. 375, 382; 245 N.W. 2d 52, 56 (1976). Defendant asserts any such duty was eliminated by Plaintiff's actual knowledge of the danger found on the crown of the press. The Michigan Court of Appeals, in *Bullock v. Gulf & Western Mfg.*, 128 Mich. App. 316, 323 (1983), established that where the specific dangers are fully known to the plaintiff at the time the injury occurred, there is no duty to warn. Consequently, Defendant must show that there remains no factual question as to Plaintiff's knowledge about the hole located beneath the cardboard at the time of the accident. Plaintiff has stated that he only performed a cursory inspection

4

of the crown and was not aware of the large hole that existed below the cardboard. The Court finds this remains a genuine issue of material fact since Defendant has not conclusively demonstrated that Plaintiff was actually aware of the dangers.

      **B.**      **Open and Obvious Doctrine**

Defendant contends that Plaintiff's failure to notice the "open and obvious" nature of the "Do Not Step" warning precludes him from any recovery. In support of this argument, Defendant cites *Kirk v. Hanes*, 16 F.3d 705, 709 (6th Cir. 1994), which holds that the danger associated with a simple tool that is open and obvious precludes recovery under a failure to warn theory. Defendant contends that the cardboard covering the hole is analogous to an "open and obvious" danger, since the cardboard was in plain sight and there is no dispute that it contained the "Do Not Step" warning. Defendant also argues the disassembled press was a simple tool because the crown was being used as a work platform and common sense would dictate that a person would need to pay attention to where he or she stepped.

In response to this argument, Plaintiff asserts that the "open and obvious" defense does not apply. In this case the danger at issue – a hole large enough for a person to fall through it – was actually covered as opposed to being open or obvious. Plaintiff also argues that Defendant's argument is without merit since the "open and obvious" doctrine applies only to premises liability cases, not cases involving general negligence. Plaintiff cites *Lugo v. Ameritech Corp., Inc.,* 464 Mich. 512 (2001), in support of this proposition. The court in *Lugo* held that a premises possessor is not required to protect an invitee from open and obvious dangers, but if special aspects of the condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk. *Id.* at 517.

The recent decision of the Michigan Court of Appeals in *Laier v. Kitchen*, Mich. App. No. 251275, 2005 WL 1225423 (May 24, 2005), establishes that the open and obvious doctrine does not

5

apply to general negligence claims as it does to premises liability claims. *Laier* involved a plaintiff who was killed while attempting to repair the front-end loader of a tractor. The defendant was a horse farmer who frequently used large John Deere tractors on his farm. After the defendant asked for the plaintiff's assistance in repairing the tractor, a loose fitting on the tractor blew off and pinned the plaintiff down and crushed his chest. The trial court held that the plaintiff's claim was precluded by the open and obvious danger. However, the Michigan Court of Appeals granted review since the plaintiff's claim involved both general negligence and premises liability. The court in *Laier* cited *Walker v. Flint*, 213 Mich. App 18, 20-22 (1995), which held that whether a defendant may properly rely on the open and obvious defense depends on the theory of liability at issue. The defense is clearly available in response to a premises liability or product liability claim for failure to warn. *Id.*

The court in *Laier* also explained that "[i]n a negligence case, the theory of liability determines the nature of the duty owed and whether the open and obvious doctrine is applicable. In a premises liability claim, the liability emanates merely from the defendant's duty as an owner, possessor, or occupier of land." *Laier*, 2005 WL 1225423 at *5.  This case does not involve premises liability, since Plaintiff was reassembling the press not on the premises of Defendant, but of the purchaser.

Plaintiff's claim is more properly viewed as a product liability issue since the injury occurred from the use associated with reassembly of the press.  Here, Plaintiff was assembling a press, which is analogous to the servicing or repairing of a large tool.  Count III of Plaintiff's Complaint alleges the press was in a "defective condition" upon leaving Defendant.  (Compl. at 5.)  This count sounds in product liability.  The normal and intended use in the assembling of the press placed both Plaintiff and the other riggers in danger.

The *Laier* court noted that the open and obvious doctrine has been extended to the products liability context where the claim involves a failure to warn by the manufacturer of a simple tool.

*Laier*, 2005 WL 1225423 at *5 (citing *Resteiner v. Sturm, Roger & Co., Inc.*, 223 Mich. App. 374; 566 NW2d 53 (1997).

The open and obvious rule applies in cases involving "simple" as opposed to complex products. When the danger is associated with a foreseeable use, and the product is a simple tool, then the manufacturer bears no duty to warn. *Glittenberg v. Doughboy Recreational Indus.,* 441 Mich 379, 392; 491 N.W.2d 208 (1992)("Our jurisprudence recognizes the well-established rule that there is no duty to warn of dangers that are open and obvious. We have also narrowed the application of the no-duty rule to those cases involving simple tools or products.") (internal quotation and citation omitted). Although Michigan law does not set forth a clear test for determining the simplicity or complexity of a product, the case law provides considerable guidance with respect to such a determination.

In *Coger v. Mackinaw Products Co.,* 48 Mich. App. 113, 210 N.W.2d 124 (1973), the court concluded that a mechanized log splitter powered by a noisy gasoline engine and requiring two persons to operate it was a complex product. In *Jennings v. Tamaker Corp.*, 42 Mich. App. 310, 201 N.W.2d 654 (1972), the court found that a large mechanical baling machine presents a complex product for purposes of assessing tort liability. The court in each case made specific factual findings in order to reach their respective conclusion. In the process, the courts illustrated several basic guidelines in the determination. First, complex tools are generally mechanized, thus eliminating the user's control. *Id.* Second, complex products tend to require a method of operation that exposes the user to possible injury. *Id.*

In *Raines v. Colt Indus., Inc.*, 757 F. Supp. 819 (E.D. Mich. 1991), the court reiterated that Michigan courts have categorized certain products as simple when one or both of the following conditions exist: (1) the products are not highly mechanized, thus allowing the users to maintain control over the products; and (2) the intended use of the products does not place the user(s) in

obviously dangerous positions. For example, the courts have indicated that hammers, knives, gas stoves, axes, buzz saws, propeller driven airplanes and trampolines are all simple tools that differ from complex machines in the manner in which they are operated and/or in the simplicity of their design. *Id.* at 826.

The press involved in the present case contains several parts which could not be shipped together. The unique nature of this machine required that each part be broken down and shipped separately. Once the press was received by the purchaser, it had to be reassembled. The press is also a highly mechanized product and is power driven. It contained large parts that required servicing as well as the manpower to conduct such servicing. Plaintiff's actions can be compared to the servicing of the product. For these reasons, the Court finds the press is not a simple tool.

Under these circumstances, the Court holds Plaintiff's claim is one to which the open and obvious doctrine is inapplicable. The press cannot be considered a simple tool. Even were the Court to find the press constitutes a simple tool, thereby allowing application of the open and obvious doctrine, the Court finds as a matter of law that the hole at the crown of the press which Plaintiff fell through was not an open and obvious condition.

**C.   Sophisticated User**

Defendant contends that because Plaintiff's employer should be considered a sophisticated user under Michigan law, Plaintiff is barred from recovery on a failure to warn claim. *See* M.C.L. § 600.2947. The statute provides, in pertinent part:

> Except to the extent a state or federal statute or regulation requires a manufacturer to warn, a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user.

M.C.L. § 600.2947(4).

A sophisticated user is defined as follows:

> A person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect. An employee who does not have actual knowledge of the product's potential hazard or adverse effect that caused the injury is not a sophisticated user.

M.C.L. § 600.2945(j).

In other words, a user is "sophisticated" if the user is from "a class of professionals that are presumed to be experienced in using and handling the product and who are aware of the dangers associated with such product." *Portelli v. I.R. Constr. Products Co., Inc.*, 218 Mich. App. 591, 607 (1988).

Given the special knowledge of sophisticated users, "the sophisticated user will be relied upon by the manufacturer to disseminate information to the ultimate users regarding the dangers associated with the product." *Id.* at 601. Defendant contends that because Plaintiff's employer is a company that specializes in rigging and moving large industrial machinery, it is beyond doubt that Plaintiff is a sophisticated user of presses. In *Jodway v. Kennametal, Inc.*, 207 Mich. App. 622, 630 (1994), the court stated that the sophisticated user doctrine only applies in relieving the defendant manufacturer of its duty to adequately and reasonably warn if the defendant can foresee that the user has full knowledge of the defect or the dangerous condition, and that the user should be expected to know of these dangerous propensities or characteristics. *Id.* at 890. Based on the evidence presented by Plaintiff of both experienced riggers and apprentices working to reassemble the press and the industry custom, no one would expect a large hole – large enough for a person to fall through – to be covered with cardboard alone. (Pl.'s Resp., Ex. B.) The Court finds the sophisticated user doctrine does not eliminate all genuine issues of material fact, and is an insufficient basis for summary judgment in Defendant's favor.

### D.     Adequacy of the Warnings

Defendant alleges Plaintiff received two separate warnings regarding the dangers that might be encountered at the top of the press.  First, Defendant argues it provided Plaintiff with sufficient warning disclosing the danger located at the top of the press.  Defendant wrote "Do Not Step" across the cardboard pieces found on the crown.  However, as Plaintiff pointed out in his pleadings and at oral argument, the sufficiency of this written warning must be considered.  The writing made no specific mention of a hole large enough for a person to fall through being concealed.  Plaintiff has provided evidence that cardboard is regularly used to cover such things as oil that has spilled on the surface of the crown.  The precautions a reasonably prudent person would take vary greatly depending on whether the cardboard is known to be covering a gaping hole or simply a slippery substance.  The Court finds Defendant's written warning cannot be held to be sufficient as a matter of law to dispel all genuine issues of material fact.

The second warning Defendant alleges Plaintiff received came from his supervisor. Defendant contends Plaintiff's supervisor alerted Plaintiff to the "Do Not Step" warning, as well as instructing Plaintiff to "watch himself for 'open holes.'" (Pl.'s Resp. at 8.)  This warning was allegedly sufficient to preclude Plaintiff from recovery, even if Plaintiff was owed a duty by Defendant to warn him of the danger found on the crown.  Plaintiff vehemently contests having ever received a warning regarding any holes at the top of the press.  Both Parties have presented evidence supporting their view of the facts in the form of affidavits from Plaintiff's co-workers and supervisor.  Plaintiff argues that his supervisor's warnings did not actually warn him of a hole large enough for an individual to fall through.  (Id., Ex. B.)  Defendant maintains that Plaintiff "was undoubtedly aware that he needed to be careful, but took no steps to heed that warning." (Def.'s Mot. for Summ. J. at 11.)  The Court finds a genuine issue of material fact also remains as to

10

whether Plaintiff received sufficient warning of the dangers on the crown of the press.

## V. CONCLUSION

Having concluded that there are genuine issues of material fact to be decided by the trier of fact, the Court DENIES Defendant's Motion for Summary Judgment.

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment **[Docket No. 50, filed February 14, 2005]** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Supplemental Brief **[Docket No. 65, filed June 7, 2005]** is DENIED as moot.

    /s/ Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:  August 26k, 2005