**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**MICHAEL A. WALKER,**

       **Plaintiff,**

                                                        **Case No.      03-72850**

**v.**

                                                        **HONORABLE DENISE PAGE HOOD**

**EAGLE PRESS & EQUIPMENT CO., LTD,**

       **Defendant.**

_____/

**OPINION AND ORDER**

**I.     INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Entry of Judgment, filed on August 25, 2006. Defendant filed a Brief in Response to Plaintiff's Motion for Entry of Judgment on September 11, 2006. Defendant filed a Supplemental Brief in Response to Plaintiff's Motion for Entry of Judgment on October 20, 2006.

Also before the Court is Plaintiff's Post-Verdict Motion for Production of Documents Relating to the Issue of Insurance Coverage, filed on August 28, 2006. Defendant filed a Brief in Response to Plaintiff's Motion for Production of Documents Relating to the Issuance of Insurance Coverage on September 14, 2006.

**II.    STATEMENT OF FACTS**

This products liability action involves a mechanical press manufactured by Defendant Eagle Press & Equipment Co., Ltd. [hereinafter "Eagle"] and sold to Majestic Industries, Inc. [hereinafter "Majestic"]. Plaintiff was an employee of Phoenix Machinery Movers, Inc. and was assisting his

employer with the re-assembly of the press at the Majestic facility when his injury occurred.

The case was tried before a jury from June 19, 2006 to July 12, 2006. On July 13, 2006, the jury rendered a verdict in favor of Plaintiff and against Defendant, in the amount of $7,023,502.00: $546,567 for present economic damages (through July 13, 2006); $690,000 for future medical damages; $2,503,000 for future lost earnings; $750,000 for past noneconomic damages (through July 13, 2006); and $2,423,902 for future noneconomic damages. The Judgment was entered on July 28, 2006, and subsequently vacated on September 9, 2006 by stipulation of the parties because future damages were not reduced to present value.

## III. APPLICABLE LAW & ANALYSIS

### A. Entry of Judgment

Defendant contends that the jury award for noneconomic damages should be reduced pursuant to M.C.L. §600.2946a, a statutory cap on noneconomic damages under Michigan law. M.C.L. § 600.2946a(1) provides, in pertinent part:

> In an action for product liability, the total amount of damages for noneconomic loss shall not exceed $280,000.00, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function, in which case the total amount of damages for noneconomic loss shall not exceed $500,000.00. On the effective date of the amendatory act that added this section, the state treasurer shall adjust the limitations set forth in this subsection so that the limitations are equal to the limitations provided in section 1483.

The adjusted caps on noneconomic damages in effect at the time of the verdict were $382,800 for a standard limitation on noneconomic damages and $683,500 for certain permanent disabilities. M.C.L. § 600.2946a; M.C.L. § 600.1483.

Plaintiff argues that M.C.L. § 600.2949a, commonly referred to as the "willful disregard of defect" statute, is controlling and therefore the statutory cap provided for in § 2946a is inapplicable. M.C.L. § 600.2949a provides:

2

> In a product liability action, if the court determines that at the time of manufacture or distribution the defendant had actual knowledge that the product was defective and that there was a substantial likelihood that the defect would cause the injury that is the basis of the action, and the defendant willfully disregarded that knowledge in the manufacture or distribution of the product, then sections 2946(4), 2946a, 2947(1) to (4), and 2948(2) do not apply.

Defendant, on the other hand, argues that Plaintiff mistakenly asserts that the exception to the statutory cap, contained in M.C.L. § 600.2949a, applies to the present situation. Specifically, Defendant contends that the two exceptions to the noneconomic damages cap are implicated only upon a threshold finding of death or permanent loss of a vital bodily function. The two exceptions Defendant relies upon are contained in § 600.2946a(3), which provides:

> (3) The limitation on damages under subsection (1) for death or permanent loss of a vital bodily function does not apply to a defendant if the trier of fact determines by a preponderance of the evidence that the death or loss was the result of the defendant's gross negligence, or if the court finds that the matters stated in section 2949a are true.

Defendant contends that the application of these exceptions requires a finding of death or a permanent loss of a vital bodily function and further argues that sections 2946a and 2949a seemingly conflict. On the latter argument, Defendant argues that because § 2946a is more specific, concerning how and when the noneconomic damages caps apply under Michigan law, it should be applied.

The Court does not agree that § 2949a requires a finding of death or a permanent loss of a vital bodily function, nor do sections 2946a and 2949a conflict. The application of section 2949a does not require a threshold finding of death or permanent loss of a vital bodily function because, as pointed out by Defendant, the language of § 2949a provides that if plaintiff demonstrates the elements of the "willful disregard of defect" statute, "then sections 2946(4) [presumption of due care arising from compliance with governmental standards], *2946a [products liability damages cap]*,

3

2947(1) to (4) [defenses of alteration, misuse, voluntary assumption of the risk and sophisticated user], and 2948(2) [open and obvious defense] *do not apply*." (emphasis added). M.C.L. § 600.2949a; *Belleville v. Rockford Manu. Group, Inc.*, 172 F.Supp.2d 913, 917 (6th Cir. 2001).

Defendant also argues that to properly invoke § 2949a, a Plaintiff is required to specifically plead this exception to place Defendant on notice that he or she intends to argue it and offer evidence on it at trial. Defendant relies on *Belleville v. Rockford Manufacturing Group, Inc.*, to support the proposition that the "willful disregard of defect" statute must be specifically plead. 172 F.Supp.2d at 917. In *Belleville*, the district court granted Plaintiff leave to amend the complaint to add a claim that Defendant violated M.C.L. § 600.2949a. In the instant case, Defendant asserts that there are no allegations in Plaintiff's Complaint or the Amended Final-Pretrial Order that put Eagle on notice that Plaintiff would argue, after trial, that the "willful disregard of defect" statute would be invoked.

Defendant's argument is without merit. Although the court in *Belleville* held that the plaintiff could amend the complaint to add a willful disregard of defect claim, the court did not hold that a plaintiff is *required* to assert the "willful disregard of defect" statute in the complaint. In any event, on page 13 of the Amended Joint Pretrial Order, Plaintiff cites under Plaintiff's Issues of Law to be Litigated, "[d]o any caps apply on non-economic damages." (Am. Joint Final Pre-trial Order, p. 13, ¶ 8). Defendant also lists under Defendant's Issues of Law to be Litigated, "[w]hether the statutory damage caps apply as set forth under M.C.L. § 600.2946a." *Id.* at 14, ¶ 9. Defendant cannot claim that it was not on notice that the application of the statutory damage caps was at issue.

To prevail on the "willful disregard of defect" statute, Plaintiff must establish: (1) that Defendant had actual knowledge that the product was defective; (2) that defendant had actual

4

knowledge that there was a substantial likelihood of the type of injury at issue; and (3) that Defendant willfully disregarded that knowledge in the manufacturing and distribution of its product. *Belleville*, 172 F.Supp.2d at 917.

Plaintiff argues that the jury's finding that Defendant was grossly negligent supports the application of the "willful disregard of defect" statute. The Jury Instruction on gross negligence given to the jury provided, "[g]ross negligence means conduct or a failure to act that is so reckless that it demonstrates a substantial lack of concern for whether an injury will result." Because the jury made a finding that Defendant was grossly negligent as defined in the Court's instructions, the Court adopts the jury's finding. *See* Form of Verdict, p. 9, Q. 16. The Court proceeds to analyze the specific elements of the "willful disregard of defect" statute.

## 1. Actual Knowledge That the Product was Defective and Actual Knowledge of a Substantial Likelihood of Injury

Plaintiff asserts that Defendant had actual knowledge that the crown of the press, as disassembled with a piece of cardboard bolted over a hole, was defective. Specifically, Plaintiff argues that Defendant was aware of the relevant standards that applied and knew that the top of the crown, as disassembled, would be used as a work platform.

In support of these contentions, Plaintiff points to the testimony of Mark Polewski, Eagle's Controller, Steve Kwiatkowki, Eagle's shop foreman, and Dr. S. Paul Singh, an expert witness. Plaintiff asserts that the testimony of Mr. Polewski, admitting that he has a good deal of experience with riggers and has been a general or prime contractor for jobs similar to the instant one, shows Defendant's awareness of the relevant standards. (Pl.'s Mot. For Entry of Judgment at 5-6; Tr. of 6-22-06, pp. 18, 20, 25, 65-66, 101, 129-30). Plaintiff argues the testimony of Mr. Polewski and Mr.

Kwiatkowski, that they would use the top of the crown as a work platform, shows Defendant had actual knowledge that the top of the crown would be used as a platform for both assembly and reassembly of the press. *Id.* at 6; Tr. of 6-22-06, pp. 36-37; Tr. of 6-21-06, pp. 98, 112. Mr. Kwiatkowski further admitted that on this particular press, the intermediate gear is slightly off center, a fact not known to Majestic because Mr. Polewski admitted that the only drawing he gave to Phoenix was Defendant's Exhibit 1, a blueprint, which does not show the intermediate gear positioned off center. *Id.* at 6; Tr. of 6-21-06, p. 121; Tr. of 6-22-06, p. 28; Tr. of 6-26-06, pp. 21-24. Mr. Kwiatkowski also admitted that a piece of cardboard would not prevent someone from accidently going through the opening and agreed that if plywood had been in place, this accident would not have happened. *Id.* at 7; Tr. of 6-21-06, p. 97-98.

To support the contention that Defendant had actual knowledge of a substantial likelihood that the defect would cause the injury, Plaintiff also points to the testimony of Mr. Kwiatkowski. Mr. Kwiatkowski acknowledged that by removing the intermediate gear and putting a piece of cardboard in its place, Defendant created a danger that someone might, either on purpose or accidently, step into the area. *Id.* at 8; Tr. of 6-21-06, p. 98.

Defendant asserts that Plaintiff made an illogical leap from the premise that Defendant knew the crown would be used as a work platform and that cardboard would not support the weight of a person, to conclude that Defendant had actual knowledge that Phoenix would be using the surface of the crown as a platform for rigging while the cardboard was in place. (Def.'s Br. in Resp. to Pl.'s Mot. For Entry of Judgment at 12). Defendant argues that the evidence shows that Mr. Polewski was unaware of what procedures Defendant used to cover the intermediate gear well. *Id.* at 12; Tr. of 6-22-06, p. 53 Further, Mr. Kwiatkowski testified he believed Defendant's shop practice of

placing cardboard over the intermediate gear well and writing "Do Not Step" did not constitute a danger. *Id.* at 12-13; Tr. of 6-26-06, p. 98.

Defendant further asserts that Defendant never had "actual knowledge" that Phoenix would be conducting overhead rigging operations before reattaching the intermediate gear cover. The testimony of Mr. Polewski shows that Defendant expected that the intermediate gear cover would be replaced shortly after the crown was delivered to Majestic's facility and before work began on any part of the crown. *Id.* at 13-14; Tr. of 6-23-06, pp. 47, 59, 108-09, 119-20. Polewski and Kwiatkowski testified that Phoenix did not tell Defendant how they intended to rig and reinstall the press once it arrived at Majestic. *Id.* at 13-14; Tr. of 6-23-06, p.59; Tr. of 6-27-06, pp. 36-37.

The testimony presented at trial, specifically that of Mr. Polewski and Mr. Kwiatkowski, supports a finding of actual knowledge on the part of Defendant that the product was defective and that there was a substantial likelihood of injury. Mr. Polewski and Mr. Kwiatkowski, individuals knowledgeable with the functioning of the subject premises as well as with riggers in general, testified that the top of the crown was used as a work platform, that the intermediate gear was slightly off center, and that, while a piece of cardboard would not prevent someone from falling through the opening, plywood would have prevented such an accident. Contrary to Defendant's assertion, the Court finds there is a clear inference of actual knowledge that Phoenix would use the surface of the crown as a platform for rigging while the cardboard was in place, from the fact that Defendant knew the crown would be used as a work platform and that cardboard would not support the weight of a person. Moreover, the fact that it was Defendant's shop practice to cover cardboard over the intermediate well with a sign stating "Do Not Step" is evidence of actual knowledge on the part of Defendant that the crown of the press, as disassembled, was defective, and that it posed a

substantial likelihood of injury.

### 2.     Willful Disregard of Knowledge

Michigan law has defined willful disregard as disregarding actual knowledge that an injury is certain to occur. *Travis v. Dreis & Krump Manufacturing Co.*, 453 Mich. 149, 178 (1996). "[T]he employer's act or failure to act must be more than mere negligence, that is, a failure to act to protect a person who might forseeably be injured from an appreciable risk of harm." *Id.* at 179. Plaintiff argues that Defendant willfully disregarded the above stated knowledge by failing to have any policies or procedures in place for securing such holes and failing to consider using something other than cardboard, despite the fact that custom and practice in the industry dictates that any hole is to be covered with something strong enough to support the weight of a man. (Pl.'s Mot. For Entry of Judgment at 8). Plaintiff points to the testimony of Mr. Polewski admitting that the disassembly of the press, including coverings, is the sole responsibility of the Eagle disassembly team. *Id.* at 9; Tr. of 6-22-06, p. 56-57. Plaintiff further points to the testimony of Mr. Polewski and Mr. Kwiatkowski admitting that Defendant has no policies or procedures specifying how and when covers were to be utilized when parts were taken off the press, regarding when plywood would be used to cover an opening, or regarding warnings. *Id.* at 9; Tr. of 6-21-06, pp. 91-93, 97; Tr. of 6-22-06, pp. 53, 103.

Plaintiff also cites the testimony of Mr. Kwiatkowski who testified that Defendant was not guarding the hole and never looked at the opening to see if someone could fall in the hole. *Id.* at 9; Tr. of 6-21-06, pp. 97, 122. Mr. Kwiatkowski further testified that it was Defendant's responsibility to cover the hole, not someone else's. *Id.* at 10; Tr. of 6-21-06, p. 124. Dr. Singh testified that Defendant knew or should have known it is improper to place cardboard over a hole someone could

8

fall through. *Id.*[1] In addition, industry custom and practice is to use plywood or some type of sheet metal that would hold the weight of a man. *Id.*

Defendant contends that it did not willfully disregard knowledge of any alleged defect or the substantial likelihood that injury would result in the disassembly and distribution of the press. Defendant asserts that Plaintiff mischaracterized the trial testimony of Mr. Kwiatkowski. Specifically, Plaintiff stated, "Mr. Kwiatkowski testified that Eagle has no policy regarding warnings," and agreed removing the intermediate gear cover created some danger. However, defendant argues, Plaintiff fails to note that the next thing Mr. Kwiatkowski stated is, "that's why we write 'Do Not Step'" thereby establishing that Defendant's practice was to issue a written warning and implying recognition of the potential danger as opposed to willful disregard. (Def.'s Br. in Resp. to Pl.'s Mot. For Entry of Judgment at 17-18; Tr. of 6-26-06, pp. 20-25, 93-95, 98).

Plaintiff has presented sufficient evidence to demonstrate that Defendant willfully disregarded actual knowledge that an injury was certain to occur in failing to implement precautions in relation to the crown of the press. Defendant's practice of writing "Do Not Step" on top of the cardboard is evidence that Defendant had actual knowledge that injury was certain to occur. Defendant argues that the act of writing "Do Not Step" over the cardboard is a precaution sufficient to overcome a finding of willful disregard. However, the Court finds that Defendant's actions nonetheless amount to a failure to act to protect a person who might forseeably be injured from this appreciable risk of harm. *See Travis,* 453 Mich. at 179. Supporting a finding of actual knowledge is the industry custom which dictates that plywood or some type of sheet metal that would hold the

---

[1] The Court accepts that Plaintiff was unable to cite the specific trial testimony of Dr. Singh in this Motion, as his trial testimony was not transcribed as of the date of the Motion. (Pl.'s Mot. For Entry of Judgment at 5).

weight of a man should have been used on the crown of the press.

The Court finds that, as a matter of law, Defendant had actual knowledge that the crown press as disassembled was defective, that there was a substantial likelihood of injury and Defendant wilfully disregarded that knowledge. The jury award for noneconomic damages shall not be reduced pursuant to the statutory cap on noneconomic damages, M.C.L. §600.2946a. Plaintiff's Motion for Entry of Judgment is GRANTED.

### B.     Production of Documents Relating to Insurance Coverage

Plaintiff requests that the Court require Defendant to answer certain interrogatories and produce documents relating to the issue of insurance coverage and to post a cash bond on appeal for the full amount of the Judgment to stay execution of the Judgment. Plaintiff asserts that on June 28, 2004, Defendant produced and provided to Plaintiff an insurance policy, marked Polewski Exhibit 22. (Pl.'s Post-Verdict Mot. For Produc. of Doc.'s at 2, Ex. A). This Policy was issued by Gerling Global General Insurance Company of Toronto, Ontario, Canada. Plaintiff argues that Defendant represented that this was the only insurance coverage available to satisfy Plaintiff's claims as demonstrated by: (1) the June 28, 2004 deposition of Mr. Polewski, wherein he was asked whether Eagle had any insurance policies other than the $1,000,000.00 policy and Mr. Polewski answered, "I don't think so." Mr. Polewski further answered in the affirmative as to whether it was his responsibility to maintain insurance policies for Eagle; (2) the fact that during the pre-trial process and several settlement conferences, Defendant maintained, through its counsel L. Pahl Zinn, that there was only $1,000,000.00 in insurance coverage; (3) the trial testimony of Mr. Zinn wherein he represented that the $1,000,000.00 policy was the only policy in effect.

Plaintiff claims that it was not until a telephone conversation between Mr. Zinn and Mr.

DeNardis concerning Entry of Judgment, that occurred after the jury returned their verdict, that Mr. Zinn disclosed to Mr. DeNardis for the first time that there is also an excess policy of liability insurance in effect relative to this claim, in the amount of $9,000,000.00. On August 9, 2006, Mr. Zinn produced this insurance policy, which was issued by the same Canadian company, to Mr. DeNardis. (Pl.'s Post-Verdict Mot. For Produc. of Doc.'s at 4-5, Ex. B).

Plaintiff suspects that Defendant and its counsel were intentionally not being completely truthful in discovery responses and deposition testimony. Plaintiff requests that the Court order Defendant to produce the following information:

   a. The entire insurance file from the underlying primary insurance carrier, including all correspondence, e-mails or memoranda to and from Mr. L. Pahl Zinn, to and from Mr. Mark Polewski, to and from the insurance broker, and to and from the excess insurance carrier regarding insurance coverage for the Walker incident;
   b. Any and all documentation concerning who was put on notice of the Walker litigation and when they were so put on notice;
   c. Any and all documentation, including correspondence, memoranda and e-mail concerning compilation of information for purposes of answering Plaintiff's Interrogatories and Request for Production of Documents pertaining to the issue fo insurance coverage and excess or umbrella insurance coverage;
   d. Any and all documentation regarding payment of the premiums by Eagle on both the primary insurance coverage and the excess or umbrella insurance coverage for the last two years prior to the date of Mr. Walker's incident until the present time.

(Pl.'s Post-Verdict Mot. For Produc. of Doc.'s at 5). Plaintiff further requests that the Court require Defendant to post a cash bond for the full amount of the verdict to secure these funds during appeal. Plaintiff contends such relief is warranted given that Defendant and its counsel have shown themselves to be untrustworthy and because the insurance coverage is through a Canadian company. *Id.* at 6.

In support of these requests, Plaintiff relies on Fed. R. Civ. P. 26(e) [requiring a party to supplement or correct disclosures if the additional or corrective information has not otherwise been

11

made known to the other parties during discovery or in writing]; Fed. R. Civ. P. 26(g)(2) [providing that every discovery request, response or objection shall be signed by an attorney, which constitutes a certification that such request, response or objection is consistent with the rules, not interposed for an improper purpose and not unduly burdensome]; Fed. R. Civ. P. 26(g)(3) [allowing the court to impose upon the person who made an improper certification an appropriate action]; Fed. R. Civ. P. 37(c)(1) [allowing the court to impose other appropriate sanctions for failure to disclosure information required by Rule 26]; and Fed. R. A. P. 8(a)(2)(E) [providing that an appellate court may condition a motion for a stay on a party's filing a bond or other appropriate security in the district court].[2]

Defendant contends that Plaintiff's Motion for Production of Documents is principally based upon Defendant's alleged failure to disclose an umbrella insurance policy in response to an interrogatory served in December 2003 and actions the Court can take pursuant to Fed. R. Civ. P. 37(c)(1). Fed. R. Civ. P. 37(c)(1) provides, in pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) [initial disclosures] or 26(e)(1) [duty to supplement disclosures] or to amend a prior response to discovery as required under Rule 26(e)(2), is not, *unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed*. In addition to or in lieu of this sanctions, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

(Emphasis added). Although written in mandatory terms, sanctions should not be imposed if the failure to disclose is harmless, which is within the broad discretion of the district court. *David v.*

---

[2] The Court notes that Plaintiff reads Fed. R. A. P. 8(a)(2)(E) as providing, "[a]ny relief by way of a stay of execution of a judgment may be conditioned on 'the filing of a bond or other appropriate security in the district court.'" F.R.A.P. 8(a)(2)(E); Pl's Post-Verdict Mot. For Produc. of Doc.'s at 6.

*Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Cody v. Phil's Towing Co.*, 247 F.Supp.2d 688, 696 (W.D. Pa. 2002). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). However, the following factors are instructive in guiding the district court's discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David*, 324 F.3d at 857; *See Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir. 1995).

Defendant asserts that there is no prejudice or surprise to Plaintiff because Defendant did not seek to introduce any evidence against Plaintiff relative to the umbrella insurance policy at trial. Defendant argues that Plaintiff stipulated to Defendant's Motion in Limine to preclude introduction of any reference to insurance pursuant to Fed. R. Evid. 411. Plaintiff was not prevented from introducing any substantive evidence at trial and was not surprised by the introduction of any such evidence by Defendant. Defendant contends that Plaintiff likewise was not prejudiced during settlement negotiations because "[f]rom February until trial, Plaintiff's settlement demand was $1 million (CAN). Def.'s Br. in Resp. to Pl.'s Mot. For Produc. of Documents at 3; Amended Joint Final Pretrial Order, p. 46, ¶ 16.

With regard to ability of the party to cure the prejudice, Defendant contends that at the time it answered Interrogatory No. 28 in December, 2003, it produced the commercial general liability policy for $1 million (CAN), but was unaware of the umbrella policy in the amount of $9 million (CAN) and was not aware of a final coverage determination until after the jury verdict. Further, a

13

copy of the umbrella policy was produced to Plaintiff on August 9, 2006, two days after being advised of this Motion.

Defendant asserts that, as discussed above, Plaintiff stipulated to the inadmissibility of any reference to insurance at trial, and the failure to disclose did not disrupt trial. Defendant also contends that there is no evidence of bad faith or willfullness and Plaintiff's characterization of Defendant or counsel as untruthful is contradicted by the record. Defendant argues that, contrary to Plaintiff's assertions, Mr. Polewski's deposition testimony shows that he had not conducted an investigation to determine whether there was an excess policy and exhibits equivocation as to his knowledge of the existence of an excess policy. (Def.'s Br. in Resp. to Pl.'s Mot. For Produc. of Documents at 3, See Ex. B. To Pl.'s Mot. For Produc. Of Documents, pp. 63:7 - 65:15).

Defendant also argues that Plaintiff's request for production does not seek discoverable or admissible evidence. Instead, the requested categories of information are protected from discovery by the attorney-client privilege and attorney work-product. Defendant asserts that Plaintiff's request is without possible purpose, as discovery is closed, the jury has returned its verdict, and the parties are awaiting determination of a final judgment.

The Court finds that Defendant's failure to disclose the $9 million insurance policy was error, however harmless error, pursuant to Fed. R. Civ. P. 37(c)(1) and did not prejudice the Plaintiff at trial. The Court is troubled by the late disclosure of the $9 million insurance policy. With respect to the factors set forth in *David*, the late disclosure of the $9 million insurance policy clearly came as a surprise to Plaintiff and may have prejudiced Plaintiff's bargaining position during settlement negotiations, however, given that the jury has returned a verdict in Plaintiff's favor, the impact of the prejudice is minimized. Supporting a finding of harmless error is the fact that Defendant cured

14

the nondisclosure by producing the $9 million policy shortly after Plaintiff brought this Motion.  In line with Defendant's assertions, the Court finds that the failure to disclose the umbrella insurance policy did not cause disruption at trial, as the parties stipulated that evidence relating to insurance was inadmissible.  Lastly, although the Court does not find this late disclosure to be wholly in line with full candor of parties and representatives of the Court, Plaintiff has failed to present the Court with any evidence of bad faith or willfulness, on the part of Defendant or counsel, in concealing this information.  Moreover, the Court finds that Plaintiff's Request for Production is unduly broad and without a clear purpose, other than to determine whether Defendant has complied with the Federal Rules of Civil Procedure.  As such, Plaintiff's Request for Production of Documents Relating to Insurance Coverage is DENIED.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Entry of Judgment **[Docket No. 116, filed August 25, 2006]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Production of Documents Relating to the Issuance of Insurance Coverage **[Docket No. 117, filed August 28, 2006]** is DENIED.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: March 23, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 23, 2007, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager